UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK LANDON ADAMS, JR.,

        Petitioner,

v.                                 Case No.  3:20-cv-442-MMH-LLL

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY GENERAL,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Frank Landon Adams, Jr., formerly an inmate of the Florida penal system,[1] initiated this action in this Court on April 30, 2020, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Adams challenges a 2012 state court (Putnam County, Florida) judgment of conviction for interception of oral communication, tampering with

---

[1] Adams was released from the custody of the Department of Corrections on March 26, 2021.

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

physical evidence, and four counts of video voyeurism. He raises five grounds for relief. See Doc. 1 at 6-16. He also filed a memorandum in support of the Petition (Memorandum; Doc. 5) with exhibits (Doc. 5-1). Respondents submitted a memorandum in opposition to the Petition. (Response; Doc. 10). They also submitted exhibits. (Doc. 11-1 through Doc. 11-5). Adams filed a brief in reply. (Reply; Doc. 18). He also submitted supplemental exhibits. (Doc. 19-1 through Doc. 19-4). This action is ripe for review.

## II. Relevant Procedural History

On October 15, 2010, the State of Florida charged Adams by information with possession of sexual performance by a child, tampering with physical evidence, and two counts of video voyeurism. Doc. 11-1 at 27-28. Adams was appointed a public defender. Id. at 34. On March 19, 2012, the State amended the information to correct the date on which the possession of sexual performance by a child and tampering with physical evidence offenses occurred. Id. at 266-267. The State amended the information again on April 12, 2012, to add a count of interception of oral communication. Id. at 276-277.

On May 18, 2012, Adams entered an open plea of no contest to Counts 3 (video voyeurism), 4 (video voyeurism), and 5 (interception of oral communication) of the Second Amended Information, and the State agreed it

would dismiss Count 1 (possession of sexual performance by a child) and Count 2 (tampering with physical evidence) at the sentencing hearing. Doc. 11-4 at 122, 125, 128-132. However, on June 6, 2012, Adams moved to withdraw his plea to seek suppression of the evidence obtained during the search of his home. Doc. 11-1 at 293-294. After a hearing, the trial court granted the motion to withdraw the guilty plea. Id. at 298-301.

After conducting an evidentiary hearing, on October 3, 2012, the trial court denied Adams' motion to suppress. Id. at 315-318. The state later amended the information for the third and final time on October 12, 2012, to add two more counts of video voyeurism and to correct the date on which the interception of oral communication offense occurred. Id. at 376-377. On October 15, 2012, Adams was arraigned on the Third Amended Information and pleaded not guilty. Id. at 378. Also on October 15, the trial court selected a jury for Adams' trial and excused the jurors until October 23, 2012. Id. at 379-380.

On October 17, 2012, Adams moved for reconsideration of the denial of his motion to suppress. Id. at 383-461. After a hearing on the motion on October 22, 2012, id. at 622-650, the trial court denied the motion. Id. at 463-464.

Trial commenced on October 23, 2012, and concluded on October 24, 2012. Id. at 686-1175. The jury found Adams not guilty on Count 1 (possession of sexual performance by a child) and guilty on the remaining six counts. Id. at 1157-59.

On October 30, 2012, the trial court sentenced Adams to five years in prison on the tampering with evidence conviction, a consecutive five-year term of imprisonment on the interception of oral communications conviction, and 364 days imprisonment on each of the four video voyeurism convictions, to run concurrent with each other and the tampering with evidence conviction. Id. at 562-567, 683.

On direct appeal, Adams, with the benefit of counsel, filed an initial brief in which he argued that the trial court erred when it sentenced him to prison. Id. at 1182-1196. The State filed an answer brief. Id. at 1198-1210. Florida's Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Adams' convictions and sentences without a written opinion on August 27, 2013, id. at 1212, and issued the mandate on September 20, 2013. Id. at 1214.

On January 6, 2014, Adams filed a pro se petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Id. at 1216-1264. The State court denied the petition on September 8, 2014. Doc. 11-2 at 2.

4

On October 30, 2014, Adams filed his initial motion for postconviction relief under Rule 3.850, Fla.R.Crim.P., in which he alleged several claims of ineffective assistance of trial counsel, and one claim that the State committed Giglio violations.[3] Id. at 23-71 (Rule 3.850 Motion). On January 7, 2016, after multiple amendments, appointment of counsel, and an evidentiary hearing, the postconviction court denied the Rule 3.850 motion. Id. at 267-273. The Fifth DCA per curiam affirmed the denial of relief without a written opinion on February 28, 2017, Doc. 11-3 at 102, and issued the mandate on April 25, 2017. Id. at 116.

On April 14, 2016, Adams filed a motion to correct illegal sentence under Rule 3.800, Fla.R.Crim.P., in which he argued that his sentence violated the prohibition against double jeopardy as well as the dictates of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004). Id. at 120-205. The trial court denied the motion on May 10, 2016. Id. at 206-207. The Fifth DCA affirmed the decision in part, reversed it in part, and remanded the case to the trial court to address Adams' Apprendi/Blakely claim. Id. at 273-274. On May 11, 2017, the trial court

---

[3] Giglio v. United States, 405 U.S. 150 (1972) (holding that the Government's failure to correct knowingly false testimony necessitates a new trial if there is a reasonable likelihood that the false testimony could have affected the judgment of the jury).

again denied relief. Id. at 1619-1633. The Fifth DCA affirmed the denial of relief with a written opinion on January 3, 2020, id. at 1706-1711, and issued the mandate on February 28, 2020. Id. at 1724. On August 4, 2020, the Florida Supreme Court denied Adams' petition for review. Doc. 11-4 at 47.

On July 16, 2018, Adams filed a second Rule 3.850 motion in which he argued he was convicted of a crime, tampering with evidence, for which he was not properly charged. Id. at 65-221 (Second Rule 3.850 Motion). The state court denied the second Rule 3.850 motion on March 11, 2019. Id. at 536-549. The Fifth DCA per curiam affirmed the denial of relief without a written opinion on May 28, 2019, id. at 597, and issued the mandate on July 22, 2019. Id. at 612.

On January 17, 2019, Adams filed a motion to set aside conviction under Rule 1.540(b), Fla.R.Civ.P., in which he alleged defense counsel committed fraud on the court by stating he intended to present a defense when he never intended to do so. Doc. 11-5 at 25-293. The State court denied the motion on May 16, 2019. Id. at 294. The Fifth DCA per curiam affirmed the denial of relief without a written opinion on February 18, 2020, id. at 1340, and issued the mandate on April 14, 2020. Id. at 1348.

On January 29, 2020, Adams filed a successive petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. Id. at 1350-1561. The Fifth DCA dismissed the petition on February 11, 2020. Id. at 1563.

### III. One-Year Limitations Period

Adams timely filed this action within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before

the Court. Because the Court can "adequately assess [Adams'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the

8

state court's decision to qualify as an adjudication on the merits. See

Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United

States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained
> decision to the last related state-court decision that does provide
> a relevant rationale. It should then presume that the
> unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be

rebutted by showing that the higher state court's adjudication most likely

relied on different grounds than the lower state court's reasoned decision,

such as persuasive alternative grounds that were briefed or argued to the

higher court or obvious in the record it reviewed. Id. at 1192, 1196.

    If the claim was "adjudicated on the merits" in state court, § 2254(d)

bars relitigation of the claim unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or

(2) "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope

of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster,

563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

12

we expect will often be so, that course should be followed." <u>Strickland</u>, 466

U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of <u>Strickland</u> was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is doubly
> so." <u>Id</u>. (citations and quotation marks omitted). "The question is
> not whether a federal court believes the state court's
> determination under the <u>Strickland</u> standard was incorrect but
> whether that determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129
> S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that counsel
> satisfied <u>Strickland</u>'s deferential standard," then a federal court
> may not disturb a state-court decision denying the claim. <u>Richter</u>,
> 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference — this one to a state court's decision — when we

are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.</u>

<u>Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Adams alleges that trial counsel was ineffective "in

arguing suppression issues." <u>Doc. 1</u> <u>at 6-7</u>. He asserts trial counsel failed to

address "misrepresentations" by Detective Schwall and failed to object to

testimony about facts that were not presented in the affidavit in support of

the search warrant. <u>Id</u>. Specifically, Adams states Detective Schwall

misrepresented that he obtained the first warrant because he believed a

felony had been committed on a victim under the age of 16, and he obtained

the second warrant to obtain bathrobes after seeing them in a video he

received from the U.S. Immigration and Customs Enforcement (ICE). <u>Id</u>.

Adams raised a substantially similar claim in Ground Five of his initial

Rule 3.850 Motion.[4] <u>See</u> <u>Doc. 11-2</u> <u>at 48-53</u>. The postconviction court

summarily denied relief on the claim, stating:

---

[4] Respondent mistakenly states Ground One "is generally the same as Ground Four
in Petitioner's Rule 3.850 motion." <u>Doc. 10</u> <u>at 7</u>.

On **Ground Five**, Defendant alleges that Trial Counsel was ineffective for failing to effectively prepare and present a defense, specifically, that Trial Counsel failed to argue suppression issues effectively in the case.

As noted in Ground Three, Trial Counsel filed two separate written Motions and argued the issues at length in two separate hearings. (See **Appendix B and C**). Neither ground of Strickland has been met. **Ground Five is denied**.

See id. at 125 (emphasis in original). The Fifth DCA affirmed the denial of relief without a written opinion. See Doc. 11-3 at 102.

To the extent that the Fifth DCA decided this claim on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Adams is not entitled to relief on the basis of this claim.

---

[5] In looking through the appellate court's per curiam affirmance to the trial court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record shows that during the hearing on the first motion to suppress, defense counsel extensively questioned Detective Schwall regarding the lack of information he had showing a crime was committed against a victim under the age of 16. Doc. 11-2 at 176-180. Counsel then argued the warrant was invalid because nothing in Detective Schwall's affidavit indicated a felony was committed. Id. at 184-185. And in both Adams' Motion to Reconsider Defense Motion to Suppress Evidence and the hearing on that motion, counsel challenged the truthfulness of Detective Schwall's affidavits in support of the warrants. Id. at 202-216; 317-325. Adams fails to identify how his counsel's performance was deficient. Thus, he fails to demonstrate either deficient performance or prejudice because counsel raised the arguments that Adams asserts counsel should have raised during the suppression proceedings. Accordingly, the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Adams raises a Giglio claim. He alleges that the State knowingly used false testimony and made misleading statements during the

two suppression hearings. Doc. 1 at 8-9. Specifically, he asserts: 1) during the first suppression hearing, the State knowingly allowed Detective Schwall to falsely testify that both Katie Barton and Victoria Romanello[6] had no knowledge of when any of the photos were taken, and that he applied for the second search warrant after he watched a video sent to him by ICE; and 2) during the second suppression hearing, the prosecutor made several misleading statements. Id.

Adams raised a substantially similar claim under Giglio as Ground Seven of his initial Rule 3.850 Motion.[7] Doc. 11-2 at 64-71. The postconviction court summarily denied relief:

> On **Ground Seven**, Defendant alleges that the State committed numerous Giglio violations. He claims that the Prosecution knowingly allowed false testimony by Detective Schwall at the suppression hearing about both Katie and Victoria having no knowledge of when the photos were taken.
>
> At hearing, Prosecutor Jennie Dunton testified that the State questioned Detective Schwall about the timeline to clarify that only Victoria was not certain about the timeline. Dunton testified that the Prosecution did not knowingly provide false

---

[6] Romanello is the daughter of Adams' wife Deborah. Doc. 11-1 at 864. Romanello lived in Adams' home and was 16 at the time the video and nude images of her and her friend, Victoria Null (also 16 at that time), were discovered on the computer. Id. at 864, 895. Barton was a family friend living in Adams' home at the time the video and images were discovered. Id. at 720.

[7] Adams misidentified the claim as "Ground Eight."

testimony at any time during the proceedings. **Ground Seven is denied**.

Doc. 11-2 at 272 (emphasis is original). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Doc. 11-3 at 102.

Initially, the Court notes that Adams does not cite, and the Court has not found, any Supreme Court precedent holding that Giglio applies to suppression hearings. Cf. United States v. Bullock, 130 F. App'x 706, 723 (6th Cir. 2005) ("'[I]t is hardly clear that the Brady line of cases applies to suppression hearings.'") (citation omitted); Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1336 (11th Cir. 2009) (deciding Florida Supreme Court's decision to not extend Giglio to cover false testimony at an earlier trial that may have affected a retrial was not unreasonable under 28 U.S.C. § 2254(d) because "[t]he Supreme Court has never extended Giglio to that situation. . . ."). When no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that a state court's conclusion is contrary to clearly established federal law as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d)(1); Mitchell v. Esparza, 540 U.S. 12, 17 (2003) (finding that, because a state court of appeals' decision does not conflict with the reasoning or holdings of United States Supreme Court precedent, the

18

decision is not "contrary to. . .clearly established Federal law"). Thus, Adams fails to meet his burden to demonstrate that the state court's denial of his <u>Giglio</u> claim was contrary to Supreme Court precedent or that the state court unreasonably determined the facts in denying relief on this ground. <u>See</u> 28 U.S.C. § 2254(d) (1), (2).

To the extent <u>Giglio</u> does apply to suppression hearings and the Fifth DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Adams is not entitled to relief on the basis of this claim.

Here, even if the appellate court's adjudication of this claim is not entitled to deference, Adams cannot establish a <u>Giglio</u> violation. To demonstrate a <u>Giglio</u> violation, Adams "must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what [s]he

19

subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation marks and ellipsis omitted). "[T]he suggestion that a statement may have been false is simply insufficient [to establish a Giglio violation]; the defendant must conclusively show that the statement was actually false." Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1313 (11th Cir. 2005). "A material misrepresentation occurs when there is any reasonable likelihood that the false testimony could have affected the judgment." United States v. Stein, 846 F.3d 1135, 1149 (11th Cir. 2017) (citing Guzman, 663 F.3d at 1348). Additionally, "[t]here is no violation of due process resulting from prosecutorial non-disclosure of false testimony if defense counsel is aware of it and fails to object." Routly v. Singletary, 33 F.3d 1279, 1286 (11th Cir. 1994) (because defense counsel was aware that a false statement was subject to impeachment but failed to object to the statement, there was no due process violation under Giglio).

Adams' Giglio claim first fails because defense counsel was aware of the allegedly false testimony and misrepresentations. To prove that Detective Schwall's testimony was false, Adams points to Detective Schwall's police

report and recorded interviews of Barton and Romanello. Adams does not allege that neither he nor counsel had the police report or recorded interviews before the first motion to suppress hearing, and he attached those items to his renewed motion to suppress, filed two weeks after the October 1, 2012 initial suppression hearing. Doc. 11-1 at 385-462. And defense counsel, who was present during the initial suppression hearing, would have been aware of any alleged misrepresentations the prosecutor made during the second suppression hearing about what transpired during the initial suppression hearing. Thus, because counsel was aware of the alleged false testimony and misrepresentations but failed to object, Adams' Giglio claim fails.

Adams' Giglio claim also warrants no relief because Adams fails to show that "the prosecutor knowingly used perjured testimony" from Detective Schwall during the first motion to suppress hearing or misrepresented his testimony during the second motion to suppress hearing. Adams asserts that during the first motion to suppress hearing Detective Schwall falsely testified that: 1) before he applied for the first search warrant, he believed a felony may have been committed because Barton and Romanello did not know when the still photographs were taken; and 2) he applied for the second search warrant after he watched a video received from the ICE forensics

department. Adams argues Detective Schwall could not have believed he was investigating a felony because during his interview with Romanello, she told him that the photographs she saw were no more than two weeks old, which meant she would have been 16 when they were taken. Adams also argues Detective Schwall did not apply for the second search warrant after watching the video because the evidence reveals he received the forensics report and video two days after applying for the second warrant.

During the hearing on the first motion to suppress, Detective Schwall testified that neither Barton nor Romanello knew when the still images they saw were taken. Doc. 11-1 at 598-600. Adams argues this testimony was false because during Detective Schwall's interviews with those witnesses, Barton never was asked about when the images were taken, and Romanello said the images she saw were taken within two weeks of when she saw them. At worst, Detective Schwall's testimony was partially incorrect because during Romanello's interview, she said she believed, but was not certain, that the photos she saw of herself were taken "maybe" a week or two before she saw them. Doc. 19 at Appendix 1 – DVD of Detective Schwall's interviews. But Barton told Detective Schwall that she and Romanello "definitely did not look through all of" the still photos. Id. And Romanello told Detective Schwall that

22

she did not look at the photos of Null. Id. Thus, Detective Schwall's testimony that Barton and Romanello did not know when the photos were taken was not false because neither witness definitively said she knew when the photos of Romanello were taken, nor did either say when the photos of Null were taken.

Concerning Detective Schwall's testimony about the second search warrant, Adams asserts Detective Schwall falsely testified that he applied for the second search warrant after he watched a video he received from ICE that revealed evidence relevant to the case. Adams argues the testimony was false because the application for a second search warrant was made on June 29, 2010, before Detective Schwall received the video on July 1, 2010. But a close review of Detective Schwall's testimony during the first motion to suppress hearing reveals Detective Schwall did not testify that he viewed the video before applying for the second search warrant. Doc. 11-1 at 603-604. Rather, Detective Schwall testified that the video and other images "led to the second search warrant." Id. at 604. The prosecutor, during the hearing on the second motion to suppress, and Detective Schwall, during trial, clarified that Detective Schwall was in contact with ICE and received verbal reports of the evidence on the video before applying for the second search warrant and

receiving the video and report in the mail. Id. at 637, 916. Thus, Adams fails to show Detective Schwall's testimony regarding the basis for obtaining the second search warrant was false.

Adams also asserts that during the second motion to suppress hearing the prosecutor misrepresented to the court: 1) that everything in Adams' motion for reconsideration of the order denying his motion to suppress "had been presented and resolved during the first suppression hearing;" 2) that the reason she called Detective Schwall to testify at the first motion to suppress hearing was to correct his error in his affidavit that Barton said she did not know when the still photos found on the computer were taken; and 3) the evidence that supported Detective Schwall's testimony regarding what Romanello said to him about when the photos were taken and why he applied for a second search warrant.[8] Doc. 1 at 8-9.

---

[8] Adams also claims that the prosecutor gave false testimony during the evidentiary hearing on his Rule 3.850 post-conviction motion. Doc. 1 at 9. This claim, however, warrants no relief because it raises no constitutional challenge to the validity of his convictions. See Carroll v. Sec'y DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–i.e., the conviction itself–and thus habeas relief is not an appropriate remedy."); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987))).

Adams mischaracterizes the prosecutor's testimony when he asserts she said, "everything in the motion had been presented and resolved during the first suppression hearing." She actually said, "the very reason that we're here again, I believe was cured by the [first] hearing[,]" and "I don't see anything new or novel that wasn't already addressed at the first hearing." Doc. 11-1 at 633, 638.

In support of those statements, the prosecutor said that during the first hearing she clarified through Detective Schwall that it was Romanello rather than Barton who provided the information regarding when the photos may have been taken that led Detective Schwall to conclude some photos may have been taken before the victims turned 16. Id. at 633-635. That is an accurate characterization of Detective Schwall's testimony. Id. at 596-601. Also, the prosecutor conceded that the issue Adams raised regarding the basis for the second search warrant may not have been resolved during the first hearing, but she could represent to the court that Detective Schwall had received verbal reports from ICE about the evidence they found from the first search that was the basis for applying for the second search warrant. Id. at 637-638. Thus, the prosecutor did not misrepresent that every issue was resolved during the first suppression hearing. And her statement that she

called Detective Schwall to clarify that it was Romanello's statement rather than Barton's statement that led Detective Schwall to apply for the first search warrant is supported by the transcript of the first motion to suppress hearing. Id. at 597-600.

Finally, concerning Adams' claim that the prosecutor misrepresented that Romanello did not know when the photos were taken, that representation was not false because, as discussed above, Romanello never definitively stated she knew when the photos she looked at were taken, and she did not look at all the photos. And the prosecutor's statement that Detective Schwall applied for the second search warrant after receiving verbal reports from ICE regarding the evidence discovered during the first search is supported by Detective Schwall's sworn trial testimony. Id. at 916. Thus, for the above stated reasons, Adams is not entitled to relief on his claim in Ground Two.

## C. Ground Three

As Ground Three, Adams alleges his right to due process under the Fifth and Fourteenth Amendments was violated because he was convicted of a crime not charged in the Information. Doc. 1 at 11-12. He appears to argue that before trial, Count II, the charge for tampering with evidence, was nolle

prossed by the State, and therefore he could not be convicted of the charge

because he was never "properly" re-charged. Id.

Adams raised this claim in his Second Rule 3.850 Motion. Doc. 11-4 at

72-100. The postconviction court summarily denied relief:

> In Koons v. State, 165 So. 3d 718,719 (Fla. 5th DCA 2015),
> the Court found that when a movant fails to allege new and
> different grounds, or fails to allege good cause for why the new
> and different grounds were not alleged earlier, the Court may
> summarily deny the Motion as successive. Defendant failed to
> specifically allege this earlier.

> Regardless, addressing Defendant's Motion on merits, the
> Court agrees that after the plea was withdrawn, the five count
> information remained until it was amended again to add two
> Counts of Voyeurism for a total of seven counts. Defendant was
> arraigned on the Third Amended Information on October 15,
> 2012 and advised of all seven counts. (See **Appendix A**,
> **Appendix A**, [sic] Transcript of October 15, 2012 Proceedings,
> Pages 6-7).

Doc. 11-4 at 536-537 (emphasis in original). The Fifth DCA per curiam

affirmed the denial of relief without a written opinion. Id. at 597.

To the extent that the Fifth DCA denied relief on this claim on the

merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review

of the record and the applicable law, the Court concludes that the state

court's adjudication of this claim was not contrary to clearly established

federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Adams is not entitled to relief on the basis of this claim.

Here, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Nothing in the record supports a conclusion that the tampering with evidence charge was ever dismissed. Each Information, including the Third Amended Information (the final Information presented before Adams' trial), charged Adams with tampering with evidence. Doc. 11-1 at 27-28, 266-267, 276-277, 376-377. And Adams was arraigned on the Third Amended Information and advised of the charges in all seven counts. Doc. 11-1 at 378. Thus, Adams was given sufficient notice before trial that he was charged with tampering with evidence, and he was not convicted of a crime for which he had not been charged.

Adams also argues that after the State had announced its intention to dismiss Counts I and II, Florida law prohibited the State from charging him with those crimes. But an error of state law is not appropriate for habeas review. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1299 (11th Cir. 2017)

28

("[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is. As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law." (citations omitted)). Indeed, this Court must defer to the state court's decision to deny this state law claim. See Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them. . . ." (internal quotation marks and citation omitted)). Therefore, relief on the claim in Ground Three is due to be denied.

**D. Ground Four**

As Ground Four, Adams argues his trial counsel was ineffective for failing to move to sever Count I, possession of sexual performance by a child. Adams alleges counsel moved to sever but the motion never was heard because the prosecutor announced Counts I and II would be nolle prossed. After the counts were not nolle prossed, counsel failed to renew the motion to sever. Adams asserts that during closing argument, the State "tied the evidence of Count I to the remaining Counts, attempting to bolster the strength of each with the other." Doc. 1 at 12.

Adams raised this claim in his initial Rule 3.850 Motion. Doc. 11-2 at 39-40. The post-conviction court summarily denied relief:

On **Ground Two**, Defendant asserts that Trial Counsel was ineffective for failing to file a Motion to Sever Count One from the remaining Counts in the Information, as amended.

The record shows Trial Counsel did file on March 28, 2008 a Motion to Sever the charges of video voyeurism from the charges of possession of sexual performance by a minor and tampering with evidence. However the record does not reflects [sic] that a hearing was held. The second prong of Strickland [sic] has not been met in that the outcome of the proceedings was not likely affected. The jury heard evidence on all seven Counts and did not find Defendant guilty on Count One. **Ground Two is denied**.

Doc. 11-2 at 124 (emphasis in original). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Doc. 11-3 at 102.

To the extent that the Fifth DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Therefore, Adams is not entitled to relief on the basis of this claim.

Here, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. Adams fails to establish prejudice because he cannot demonstrate a reasonable probability of a different outcome had counsel moved to sever the possession of sexual performance by a minor count (Count I).

Notably, the trial court instructed the jury that:

> A separate crime has been charged in each count of the Information, and although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crime charged. If you return a verdict of guilty, it should be only for that offense or those offenses that have been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then, of course, your verdict must be not guilty.

Doc. 11-1 at 1059-1061. Thus, the jury was instructed to consider the evidence supporting each count separately and that a finding of guilt as to one count could not be considered when deciding the verdict as to the other counts. And, jurors are presumed to follow the instructions given by the court. United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011)

("We presume that jurors follow the instructions given by the district court." (citing United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir.2005))). Additionally, the jury found Adams not guilty on Count I and guilty on the remaining counts, which shows that the jury separately considered each count despite the joinder of Count I. See Walker v. Sec'y, Fla. Dep't of Corr., 495 F. App'x 13, 17 (11th Cir. 2012) (concluding petitioner failed to show prejudice on claim that counsel was ineffective in failing to sever three counts where "[t]he jury acquitted him on two counts, which indicates that the jury separately considered each count despite the joinder of all the counts.").

Last, the Court observes that Adams' contention that he was prejudiced by the joinder of Count I with the other counts is conclusory and supported with no evidence. As such the relief he seeks in Ground Four is due to be denied. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to merit habeas relief).

**E. Ground Five**

As Ground Five, Adams argues his trial counsel was ineffective for failing to investigate, prepare and present a defense, and for committing fraud and perjury. Specifically, Adams asserts trial counsel failed to: 1) call

several defense witnesses; 2) present evidence that he was framed by family members who wanted his wife's estate and to gain custody of Romanello and her inheritance from her father; 3) object to the introduction of the still photos when he viewed them for the first time at the commencement of the trial; 4) address Detective Schwall's "known perjury" on cross-examination; 5) introduce a photograph of Adams' bathrobe with a blue lapel stripe hanging on a coat rack; 6) object during closing argument to the prosecutor twice implying Adams lied during his trial testimony; 7) present an alibi defense; and 8) make several objections during sentencing. Adams further asserts trial counsel testified falsely several times during the evidentiary hearing on his initial Rule 3.850 Motion. Finally, Adams contends trial counsel committed fraud on the state courts, apparently because he failed to present a defense during trial.

   1. Ineffective assistance during sentencing claims

   Adams asserts trial counsel was ineffective at sentencing for failing to object to: 1) the State testifying for the absent victim; 2) improper allegations by the State that supported the upward departure sentence; 3) improper comments by the judge; 4) the judge imposing an upward departure sentence without announcing the reasons for the departure; and 5) the judge imposing

an upward departure sentence for reasons precluded by Florida law. These ineffective assistance claims concern sentencing matters. But Adams has served his sentences. Consequently, the Court can provide no further remedy concerning sentencing, and these claims have become moot. See United States v. Brown, 517 F. App'x 657, 661 (11th Cir. 2013) ("Completion of a prison term moots a challenge to the term of confinement, United States v. Farmer, 923 F.2d 1557, 1568 (11th Cir. 1991), unless a claimant shows the completed term has collateral legal consequences, Spencer v. Kemna, 523 U.S. 1, 7–14 (1998)."). Williams v. Schneiderman, 409 F. Supp. 3d 77, 80 (E.D.N.Y. 2017) ("Courts have repeatedly held that challenges to the validity of a sentence are mooted by the expiration of that sentence.") (citations and internal quotation marks omitted); United States v. Goss, 96 F. App'x 365 (6th Cir. 2004) (concluding that defendant's objections to sentencing calculation were moot once he had served his sentence of six-months incarceration and four-months house arrest).

 2. Ineffective assistance during trial claims

 Adams raised substantially similar claims concerning trial counsel's failure to effectively prepare for trial and present a defense as Ground Six of

his Rule 3.850 Motion. Doc. 11-2 at 53-64. The postconviction court held an

evidentiary hearing, after which it denied relief:

On **Ground Six**, Defendant alleges that Trial Counsel was
ineffective for failing to effectively prepare and present a defense.
Defendant claims that Trial Counsel was ineffective for
numerous failures throughout trial.

At hearing, Defendant testified that Trial Counsel did not
adequately follow up on discrepancies about a bathrobe testified
to by the victim at trial. He also claimed Trial Counsel failed to
bring out information about the victim's fresh sunburn from her
trip to the beach trip [sic] while Defendant was allegedly at the
hospital with his dying wife. Defendant testified that this could
have been presented as an alibi. Defendant testified that his
wife's children had reasons to lie about him: he curtailed the
daughters' spending habits; there was evidence of drug and
alcohol abuse; his wife's sons had moved out when he told them
to either be in school or get a job. He claimed that, because of
family issues, those who testified against him allegedly had some
type of animus motivating them to set him up. He testified that
Trial Counsel failed to follow up on these matters.

At hearing, Trial Counsel testified that the first focus was
on whether the victim was under 16 when the video or photos /
images were taken. If they were taken after the victim turned 16,
the charge against Defendant would be a misdemeanor. At first
the victim was not sure when the images were taken, but later
remembered based on her tan lines in the images that they would
have been taken before she turned 16. This was the subject of a
Motion to Suppress which was ultimately denied. Trial Counsel
then adopted a Motion for Reconsideration that the Defendant
wanted filed, and argued it before the Court. The Motion was
denied.

Trial Counsel testified that his main strategy was that the
computers were in a public part of the home. A lot of people came

in and out of the home and could have had access to them. Trial Counsel testified that he did not pursue the alibi defense because surveillance cameras in the house were set up to run even when Defendant was not there. Even though Defendant claimed that he had stayed at the hospital for two weeks with his dying wife, there were times when he had gone back to the house. Trial Counsel testified that he did not actively pursue defenses about the other family members "framing" Defendant because they were not believable, and there was no real evidence to support those theories and speculations. Regardless, Defendant touched on all the defense theories above during his testimony at trial.

Trial Counsel testified at the hearing that multiple witnesses identified the voice in the video as Defendant's. Defendant on the stand at trial could not rule out that it was his voice.

Defendant complains that Trial Counsel advised him against testifying at trial. Against this advice, he took the stand on his own behalf but did not like the questions his counsel asked. Attorneys are not bound by a list of questions prepared by the client. Attorneys are schooled in the law and must exercise their independent judgment on how to best present a case.

Trial Counsel's strategy resulted in Defendant being found not guilty on Count One.

Thus, the Court concludes that neither prong of Strickland has been met here. **Ground Six is denied**.

Id. at 270-272 (emphasis in original). The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Doc. 11-3 at 102.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Adams is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of the claim is not entitled to deference, the ineffectiveness claim is without merit because the record supports the postconviction court's conclusion.

### a. Failure to call witnesses

Adams claims trial counsel was ineffective when he failed to call Brooks Callaway, Denise Hawkins, David McCleary, Dennis McCleary, Ida Mae (Vicky) McCleary, Tracy McCleary, and Shirley Adams to testify. Adams asserts Shirley Adams would have given testimony that supported his alibi defense, and Dennis McCleary would have provided testimony: 1) supporting Adams' defenses that he was framed by others who wanted custody of Romanello and her inheritance, and law enforcement's motive to steal a large sum of cash from Adams' home; 2) that Romanello used alcohol and drugs

and spent excessively while her mother (Adams' wife) was in the hospital dying; and 3) that Romanello alleged child abuse against Dennis McCleary and his wife which the Department of Children and Families found was unsubstantiated. Adams does not proffer the testimony of the other witnesses.

Initially, the Court finds that Adams' unsubstantiated allegations about the testimony these witnesses would have given are facially insufficient to support a claim of ineffective assistance of counsel for failure to call the witnesses. "Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Having failed to produce such evidence, relief on this claim is due to be denied on the merits. See Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (noting that where a petitioner alleges ineffective assistance of counsel for failure to call a witness, the "prejudice burden is heavy ... because often allegations of what a witness would have testified to are largely speculative.") (quotation marks and citation omitted)

Nevertheless, even if Adams presented a facially sufficient claim for relief, it does not have merit. At the evidentiary hearing on Adams' initial Rule 3.850 Motion, his trial counsel, Ralph Rowe, testified that Adams provided him a list of potential witnesses, most of whom were deposed or interviewed by counsel's investigator. Doc. 11-2 at 735. Counsel testified that the witnesses were not helpful because they could not testify about "anything that tended to prove or disprove the allegations against Mr. Adams." Id. at 736. Based on the depositions and reports from the investigator, counsel said "none of [the witnesses] would have had a kind word to say about Mr. Adams." Id. He also testified that the matters about which Adams wanted Shirley Adams and Dennis McCleary to testify were repetitive to other testimony, inadmissible, or would have backfired on the defense. Id. at 735-742.

Mr. Rowe's informed decisions on matters of trial strategy, including whether to call particular witnesses, are entitled to deference. See Strickland, 466 U.S. at 690 ("[A] court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Even if a different trial attorney would have made different decisions, considering the

record, the Court cannot conclude that Mr. Rowe's performance "fell below an objective standard of reasonableness." Id. at 688, 690. Thus, Adams' claim that counsel was ineffective in calling these witnesses warrants no relief.

       b. Failure to present defenses

Adams complains trial counsel was ineffective for failing to present both an alibi defense, and the defense that family members framed him by fabricating the video and images in a plot to take custody of his wife's estate and Romanello's inheritance. His alibi was that he was at the hospital with his dying wife 24 hours a day when the video discovered on his computer was made. And his fabrication defense was that David McCleary and Brooks Callaway, Deborah Adams' sons, accessed Adams' computer and fabricated the videos and images because they had animosity against Adams and plotted with Denise Hawkins, Frank Hawkins, Phillip McCleary, and Ida McCleary to control Adams' wife's estate and gain custody of Romanello and her inheritance.

As an initial matter, the Court notes that during trial Adams presented both defenses through his own testimony. Doc. 11-1 at 977-988. Thus, to the extent Adams asserts counsel was ineffective in failing to present the defenses, the assertion is belied by the record.

To the extent Adams complains counsel failed to call other witnesses to support the defenses, counsel testified that none of the witnesses liked Adams, nor could they testify to anything that tended to disprove the allegations against Adams. Doc. 11-2 at 736. Adams testified during the evidentiary hearing that: 1) Dennis and Tracy McCleary would have testified that other family members rarely visited Deborah Adams in the hospital and discussed their intention to get her estate and Romanello's inheritance; and 2) his mother, Shirley Adams, would have provided testimony supporting his alibi that Romanello's beach trip occurred while he was with Deborah Adams in the hospital, and therefore Adams could not have been the man in the video rubbing lotion on Romanello's sunburned skin. Id. at 627-630, 640-644, 705-706. However, he presented no testimony from those witnesses or other evidence in support of his contentions. Thus, the claim is speculative and insufficient to warrant habeas relief. See McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021) ("[A] petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness[]" because "often allegations of what a witness would have testified to are largely speculative.") (citations omitted).

c. Failure to object to photographs

Adams complains counsel was ineffective for failing to object when the prosecutor introduced still photos at trial on the ground that he had not seen the photos until the commencement of trial. This claim of ineffective assistance can be denied on Strickland's prejudice prong. Adams demonstrates no prejudice because he fails to allege and show that if counsel had objected to the photos, the trial court would have been required to sustain the objection and exclude the photos, and that without the photos there is a reasonable probability of a different outcome.  See Brewster v. Hetzel, 913 F.3d 1042, 1052 (11th Cir. 2019) (when evaluating a claim that counsel was ineffective for failing to object, "[i]t doesn't matter for prejudice purposes whether the judge at this defendant's trial would have sustained an objection; what counts is whether the judge would have been required to do so under the applicable law and, if so, whether doing so would have resulted in a reasonable probability of a different result."). Thus, because Adams fails to demonstrate prejudice, this sub-claim warrants no relief. See Strickland, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

42

### d. Failure to cross-examine Detective Schwall with "known perjury"

Adams complains counsel was ineffective for failing to impeach Detective Schwall's credibility with "known perjury." According to Adams, Detective Schwall lied: 1) during the hearing on the first motion to suppress when he testified that neither Barton nor Romanello knew when the still photos were made where Barton was never asked about when the photos were made, and Romanello said she believed the photos she saw were taken one or two weeks before she saw them; 2) in his police report about delivering an Inventory and Return when there is no record one existed; 3) during his deposition when he testified he was looking for only two bathrobes during the second search of Adams' home when photographs reveal law enforcement searched multiple computers; 4) when he testified he applied for the second search warrant after he saw the two bathrobes in a video obtained during the first search; 5) during his deposition when he said that he did not seize the fourth computer in Adams' house because he did not know there was a fourth computer; and 6) to support the charge of tampering with evidence by testifying Adams saw law enforcement arriving at 1:57 p.m. and executed a "drive scrubber program" at 1:58 p.m., when records revealed Detective Schwall called dispatch at 2:06 p.m. to notify them of his arrival at Adams'

43

home. Doc. 1 at 15. Adams also asserts counsel should have impeached Detective Schwall with information in his personnel file that he "had been reprimanded by his superiors on numerous occasions for dishonesty. . . ." Id. at 15-16.

Last, Adams asserts counsel should have questioned Detective Schwall regarding: 1) why he did not list the two bathrobes in the application for the second search warrant if the purpose of the search was to obtain the two bathrobes; 2) why would Detective Schwall expect to find a bathrobe that belonged to Romanello when six weeks earlier he had helped retrieve Romanello's belongings from Adams' home; 3) why law enforcement searched a drawer known to have $26,000.00 inside when the bathrobes were on a coatrack; and 4) why did law enforcement wait four days after obtaining the warrant to search Adams' home on a day they knew he was not home. Id. at 16.

Adams' assertion counsel failed to cross-examine Detective Schwall about the time he arrived at Adams' home is belied by the record. Counsel cross-examined Detective Schwall on this issue, Doc. 11-1 at 942-944, and during closing argued that the time discrepancy was one of several errors made by Detective Schwall during the investigation. Id. at 1103.

44

Concerning Adams' assertion that counsel should have cross-examined Detective Schwall with his alleged false testimony that Barton and Romanello did not know when the still photos were taken, and he applied for the second search warrant after seeing the bathrobes in the video ICE sent to him,  counsel was not ineffective in failing to cross-examine Detective Schwall on these issues. As discussed above in Ground Two, Adams has not shown Detective Schwall testified falsely regarding either matter.

To the extent Adams contends counsel should have cross-examined Detective Schwall about the Inventory and Return following the second search, he fails to show there was any false statement counsel could have used to impeach Detective Schwall. Adams incorrectly asserts Detective Schwall made two conflicting statements about the matter in his report. He alleges Detective Schwall first said he forgot to leave a copy and therefore mailed a copy to Adams then subsequently said he left a copy at Adams' home and Adams' son "was responsible for it being missing. . . ." Doc. 1 at 15. However, a review of the report reveals Detective Schwall wrote that when he discovered he had not left an Inventory at Adams' home, he mailed a copy to Adams. Doc. 11-2 at 420. The report later states that: 1) Detective Schwall asked Adams "about the Inventory and Return which was to be left with a

copy of the Search Warrant[]"; 2) Adams said he had not seen the Inventory and Return; 3) <u>Adams</u> said "a family member who is residing with him. . .may be a reason for the missed paperwork[]";  and 4) a copy of the Inventory and Return was sent to Adams. <u>Id</u>. <u>at 421</u>. Thus, Detective Schwall never stated that he left a copy of the Inventory and Return at Adams' home. Adams' assertion he never saw the Inventory and Return does not establish Detective Schwall's statements were false. Therefore, Adams cannot show counsel was ineffective for failing to cross-examine Detective Schwall on this issue.

Adams asserts Detective Schwall lied during his deposition when he said that during the second search, he was looking for only the two bathrobes and did not search for or disturb anything else. <u>Doc. 1</u> <u>at 15</u>; <u>Doc. 11-1</u> <u>at 181</u>. He contends 20 photographs show police searched the computers at Adams' home. <u>Id</u>. But Adams fails to demonstrate Detective Schwall lied. First, the photographs do not establish the police touched or disturbed the computers during the second search. <u>Doc. 19</u> <u>at Appendix 1 – DVD</u>. Second, Detective Schwall and three other officers participated in the second search. <u>Id</u>. <u>at 180-181</u>. Thus, even if another officer touched or searched a computer, there is no indication Detective Schwall was aware of that. Therefore, Adams cannot

show counsel was ineffective for failing to cross-examine Detective Schwall on this matter.

Adams asserts Detective Schwall lied during his deposition when he said he did not confiscate a fourth computer in Adams' home because he did not know about that computer. Adams argues that was a lie because Detective Schwall earlier said a drive scrubber program had not been run on the computer in Romanello's room, which Adams says is the fourth computer.

Again, Adams misconstrues Detective Schwall's deposition testimony on this matter. Detective Schwall did not testify that the reason the fourth computer was not confiscated was he did not know there was a fourth computer. Rather, he testified that he did not know why the decision was made to not take the fourth computer, and he was not sure whether there actually was a fourth computer, although he was told during the interviews of Barton and Romanello that there were four computers. Doc. 11-1 at 157, 170, 176. Because Adams has not shown Detective Schwall lied about the reason the fourth computer was not confiscated, he cannot show counsel was ineffective for failing to cross-examine Detective Schwall on this matter.

Adams asserts counsel should have impeached Detective Schwall with information in his personnel file that he had been reprimanded for

dishonesty. But during the evidentiary hearing, counsel testified that he obtained Detective Schwall's file and there was nothing that was admissible or useful to impeach Detective Schwall. Doc. 11-2 at 726-727. Adams fails to show the trial court would have been required to allow Adams to use the information to impeach Detective Schwall. Thus, Adams cannot show counsel was ineffective for failing to use the information to impeach Detective Schwall.

To the extent Adams asserts counsel should have questioned Detective Schwall about why the bathrobes were not listed in the affidavit for the second search warrant, why he would search for a bathrobe Romanello may have already retrieved, why police searched a drawer previously known to contain a large amount of cash, and why police waited four days to search the home, these claims are speculative. How Detective Schwall would have answered these questions is unknown, and Adams fails to explain how testimony on these matters might have affected the verdict. Thus, Adams fails to show counsel was ineffective for failing to ask Detective Schwall these questions. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, speculative, conclusory, or unsupported allegations are insufficient to grant relief on an ineffective assistance of counsel claim).

48

Finally, counsel cross-examined Detective Schwall at trial regarding inconsistencies about when he arrived at Adams' home, and a missing portion of an audio recording of Adams.  Doc. 11-1 at 942-951. Because of this cross-examination, counsel was able to argue during closing that Detective Schwall had credibility and memory issues. Id. at 1101-1107. Counsel was not ineffective in his cross-examination of Detective Schwall for not attempting to impeach him on every potential inconsistency, especially where, as here, Adams fails to show additional inconsistent or false statements. Thus, this subclaim warrants no relief.

> e. Failure to object to prosecutor's statements during closing argument

Adams asserts counsel was ineffective for failing to object when, during closing argument, the prosecutor twice implied he lied during his testimony. Adams identifies no specific improper statements to which trial counsel should have objected. Thus, the claim is vague and unsupported by facts. Accordingly, the claim warrants no relief.

Even if the claim was sufficiently pled, it is procedurally barred. In his initial Rule 3.850 Motion, Adams asserted this claim as a Giglio violation. Doc. 11-2 at 70. He did not assert an ineffective assistance of counsel claim. Id. at 53-71. Thus, because Adams failed to fairly present this ineffective

assistance of counsel claim to the state courts and can no longer present the claim under state procedural rules, the claim is procedurally barred from review. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40 (1999) (an issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review).

Even if the claim was not procedurally barred, it would fail on the merits. In his initial Rule 3.850 Motion, Adams asserted the prosecutor implied Adams lied when he testified: 1) he was not on his computer the night before the day on which he was "scrubbing" his hard drive; and 2) anyone could access his computers. Doc. 11-2 at 70. He asserts that he testified he "did not recall" whether he was on his computer the night before "scrubbing" his hard drive. Id. He also asserts that his testimony that anyone could access his computer was consistent with what he said during his recorded statement. Id.

When asked at trial, "And do you recall working on your compact computer or the compact computer the previous night?", Adams answered, "I don't." Doc. 11-1 at 1002. During her closing argument, the prosecutor stated, "This man said he had not worked on that computer at all that night, but

there's evidence that he did." Id. at 1085. Under Florida's closing argument standard, and considering Adams was the only one at the home when the computer was accessed on May 18, 2010, and recalled the details of what he did with the computer the next morning, Doc. 11-1 at 842, 999, it was reasonable for the prosecutor to infer and argue that Adams falsely testified he could not recall whether he used the computer the night before. See Miller v. State, 926 So. 2d 1243, 1254–55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."). Thus, Adams cannot show that counsel was deficient for failing to object to this comment and also cannot show prejudice.

Adams testified, "[a]nyone could have access to my computers." Doc. 11-1 at 982. And the State published a tape recording of the interview Detective Schwall had with Adams:

"(Indiscernible.) Is anything that T. is saying is that true as far as what's on that computer?

"Not to my knowledge. I mean, everybody uses that computer. But not to my knowledge.

"Who's everybody?

"T. Both T.s. T.'s best friend is also T. That's what she says when they refer to L.T.

"That's why they refer to her – that's the only reason?

"I just call them T. (indiscernible). (Indiscernible.) Anyway, Katie, Brian, myself, anybody that happens to be over has the first computer. They like to sit in there. T. has a computer in her room, but they don't like to use it because (indiscernible).

Id. at 936-937.

During her closing argument, the prosecutor stated:

. . .We know that the defendant told Detective Schwall in that interview during the first search warrant that the people that had access to his computers were only himself, T., Katie, and he mentioned Brian.

***

Now, the defendant testified in court not that just T., Katie, and Brian had access, that anybody had access to my computers. He couldn't tell us who, he couldn't tell us how, but, oh, I kept my house unlocked. Those computers weren't password protected. Anybody. Anybody could access my computers. That's not the concern he raised with Detective Schwall during the interview at the search warrant.

Id. at 1073-75.

Arguably, the prosecutor's statement was not inaccurate. It is not clear from the recorded interview whether Adams' statement "anybody that happens to be over has the first computer" referred to any person that came to the home or any of the individuals  he specifically named (T, L.T., Katie, Brian) who were at the home. Thus, Adams cannot show that counsel was

52

ineffective for failing to object to a comment that was a fair comment on the evidence.

f. Failure to introduce photograph of Adams' bathrobe

Adams complains counsel was ineffective for failing to introduce a photograph of Adams' white bathrobe with a blue lapel stripe hanging on a coat rack. See Doc 11-1 at 514. Adams argues the photograph would have rebutted the State's position that Adams was the individual in the video with Romanello wearing an all-white bathrobe.

This claim fails because Adams cannot show prejudice. Even if counsel had entered the photograph into evidence, and Adams testified the photograph showed his white bathrobe with a blue stripe, Romanello and Null both testified that they recognized the voice of the man speaking in the video as Adams' voice. Id. at 880, 903. Moreover, the man in the video was wearing a wedding ring, and Adams was the only person in the home who was married. Id. at 880, 993. And even if a white robe with a blue stripe belonged to Adams, an all-white bathrobe was recovered on a coat rack in Adams' bedroom during the second search, and Adams could have been wearing that robe during the time depicted on the video. Id. at 181, 712, 952.

In fact, Romanello testified she saw Adams wear the white bathrobe shown in the video "all the time." Id. at 881. Thus, this sub-claim warrants no relief.

> g. Failure to present Detective Schwall's ulterior motive

Adams complains counsel was ineffective for failing to present evidence showing Detective Schwall's motive for charging Adams was to steal cash discovered in a dresser in Adams' home during the first search. The evidence on which Adams relies is Detective Schwall: 1) failing to confiscate the fourth computer which may have had evidence showing Romanello's involvement in framing Adams; 2) manipulating the time of arrival at Adams' home to manufacture the tampering with evidence charge; 3) manipulating Adams' two-hour recorded statement to capture only 19 minutes of the interview; 4) waiting four days after receiving the second warrant to search Adams' home at a time Adams was not home; 5) falsely testifying at the suppression hearing that he applied for the second warrant after seeing the two bathrobes in the video; 6) failing to mention he was searching for bathrobes in the affidavit for the second search warrant; and 7) testifying during his deposition that during the second search nothing other than the bathrobes were touched when photographs show that the drawer in which the cash was

found during the first search "had been removed from its tracks and replaced incorrectly." Doc. 11-2 at 60-61.

During the evidentiary hearing on Adams' initial Rule 3.850 Motion, defense counsel testified he made a strategic decision to argue a search warrant should not have been issued because there was only evidence a misdemeanor had been committed. Id. at 724. He chose to not argue Detective Schwall intended to steal cash from Adams because there was no evidence to support the argument, and Detective Schwall was a credible witness. Id. Moreover, counsel believed it would have been unethical to make the argument without evidence to support it. Id. at 725.

Adams is not entitled to relief on this claim because the record reflects that counsel did not perform in an objectively unreasonable manner by not presenting a defense that Detective Schwall intended to steal cash from Adams. "Judicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, and as such, Adams must show that failing to challenge Detective Schwall's motive was outside the wide range of professionally competent assistance, see id. at 690. Adams simply fails to make this showing.

Here, the record shows that during the initial search of Adams' home, Detective Schwall discovered a large amount of money in a dresser in the master bedroom. Detective Schwall and two others counted the money then put it in a bag and gave it to Adams. Doc. 11-1 at 173-174. Adams admits no money was ever taken. Doc. 11-2 at 675. Thus, the record establishes that despite finding and possessing Adams' money, Detective Schwall did not steal the money. And Adams' contention that Detective Schwall intended to steal the money during the second search is based on nothing more than his own speculation.

Under these circumstances, Adams cannot show that counsel's failure to pursue this defense was deficient performance, or that the outcome of the trial would have been different had counsel presented the defense. "[N]o absolute duty exists to investigate particular facts or a certain line of defense." Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000) (en banc). Moreover, "[c]ounsel is not required to present every nonfrivolous defense." Id. at 1319. Given the lack of evidence in support of this defense, Adams fails to make even a prima facie showing that this was a "nonfrivolous defense." Regardless, Adams fails to make any showing that "no competent

counsel would have taken the action that his counsel did take." Id. at 1315. Accordingly, Adams is not entitled to relief on this subclaim.

3. Claim that counsel committed fraud and perjury

Adams first asserts counsel testified falsely during the evidentiary hearing on his initial Rule 3.850 Motion. As discussed above concerning Adams' assertion that the prosecutor testified falsely during the same evidentiary hearing, see page 24, footnote 8, this claim raises no constitutional challenge to the validity of Adams' convictions. Accordingly, the claim warrants no relief. See Quince, 360 F.3d at 1262 ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." (citation omitted)).

Adams' second claim is that counsel committed fraud on both the state court and Adams by falsely asserting he intended to present a defense. This claim was raised in state court in Adams' Rule 1.540(b) Motion to Set Aside Conviction. Doc. 11-5 at 25-56. There, Adams alleged counsel committed fraud when he "repeated[ly] assert[ed] at trial that he intended to present a defense, when all evidence demonstrates that he never had any such intentions." Id. at 30.

Adams' claim that counsel rendered ineffective assistance or committed fraud by failing to present a defense is belied by the record. Adams' attorney presented an opening statement during which he asserted the evidence would not prove who viewed child pornography on the computer and who hid the camera that took the video and pictures of Romanello and Null on the computer. Doc. 11-1 at 713-717. Counsel asserted the evidence would show all the computers in the home were available to and regularly used by all the people living in the home and their guests. Id. And counsel asserted the evidence would show there were members of the family with a financial interest "to get Mr. Adams out of the way." Id. at 716-717.

Counsel's theory of defense was that: (1) the State failed its burden to prove Adams committed the offenses; (2) Detective Schwall had a poor memory, and his investigation was sloppy; (3) other witnesses were not credible because they were caught in lies; and (4) there were many people in and out of the home who had access to and frequently used the computers who could have been responsible for the child pornography and photographs of the victims. See Doc. 11-1 at 1099-1129. In support of this theory, counsel elicited the following evidence. On cross-examination, Romanello conceded she was wrong when she testified she identified Adams in the video by his

58

wedding ring and red hair. Id. at 887-888. Also on cross-examination, Barton admitted her testimony that she moved into Adams' home to help his family was inaccurate; she actually moved there because she needed a place to live. Id. at 736. During cross-examination of Detective Schwall, counsel highlighted the discrepancy between Detective Schwall's report and the computer-aided dispatch report concerning the time Detective Schwall arrived at Adams' home, Detective Schwall's lack of knowledge about why over an hour of the recorded statement of Adams was missing, and inconsistencies between Detective Schwall's deposition testimony and trial testimony regarding how much time he spent with Adams outside during the first search of the home. Id. at 942-953.

Concerning access to the computers, Barton testified that the computer on which she saw the video and photographs was in the "common area" of the home where "visitors would feel okay about wondering [sic] around in if they came to visit the home." Id. at 741. Barton, Null, and Romanello all used the computers in the common area. Id. at 742. During Adams' recorded statement, he stated "everybody uses that computer." Id. at 936. And during trial Adams testified "everybody used the computer." Id. at 976. Adams further testified about his theory that Romanello's aunt, Denise Hawkins,

had her two nephews (Deborah Adams' sons), who were proficient with computers, load the images on the computer because she wanted Adams "out of the way" to take Deborah Adams' estate and Romanello's money. Id. at 977-986.

There is no merit in Adams' claim of fraud on the court. Counsel presented a defense challenging the sufficiency of the State's evidence and focusing on the access others had to the computer on which the child pornography and images of Romanello and Null were discovered. Counsel's trial strategy succeeded to the extent Adams was found not guilty of the most serious charge of possession of child pornography. Thus, this sub-claim warrants no relief.

For all of the foregoing reasons, Adams is not entitled to habeas relief on the claims in Ground Five.

## VII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Adams seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Adams "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

61

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Adams appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of August, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

TpaP-3
Cc: Frank Landon Adams, Jr.
    Counsel of Record